# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRIEU MINH LY,<br><br>                        Petitioner,<br><br>            v.<br><br>PAMELA BONDI, in her official capacity as Attorney General; MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; WARDEN, Adelanto Detention Facility; and ANDRES QUINONES, in his official capacity as ICE Field Office Director,<br><br>                        Respondents. | Case No. 5:26-cv-01320-SPG-DFM<br><br>**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER [ECF NO. 7]** |

Before the Court is the Petitioner's Motion for Temporary Restraining Order, (ECF No. 7 ("Motion")), filed by Petitioner Trieu Minh Ly ("Petitioner"). The Court has read and considered the Motion and concluded that it is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS the Motion.

-1-

## I.    BACKGROUND

Petitioner is a noncitizen who alleges that he is improperly detained at Adelanto Detention Center. (ECF No. 6 ("Petition") ¶ 5); (ECF No. 7-1 ("Memo") at 5–6). In the Motion, Petitioner requests immediate release from Adelanto Detention Center on the terms of supervision that governed his release before his alleged unlawful detention. *See* (Memo). As Respondents, Petitioner names Pamela Bondi, in her official capacity as Attorney General; Markwayne Mullin, in his official capacity as Secretary of the Department of Homeland Security;[1] U.S. Department of Homeland Security ("DHS"); Warden, Adelanto Detention Facility; and Andres Quinones, in his official capacity as Immigration, Customs, and Enforcement ("ICE") Field Office Director. *See* (Pet.).

### A.    Factual Background

The following facts are alleged in the Petition for Writ of Habeas Corpus and Petitioner's Declaration in support of the Motion. (Pet.); (ECF No. 7-2 ("Pet. Decl.")).

Petitioner is a citizen of Vietnam and entered the United States in or around 1979. (Pet. ¶ 2). According to Petitioner, he was granted permanent resident status. (*Id.*). Petitioner has two children, both of whom are United States citizens. (Pet. Decl. ¶ 7). From 1984 until his detention, he worked as an electronic technician for Excellon Automation. (*Id.*).

#### 1.    Petitioner's Removal Proceedings

In 2000, Petitioner sustained a conviction.[2] (Pet. ¶ 2). On January 21, 2004, Petitioner was ordered removed by an immigration judge. (*Id.*). At some point after serving time in prison, Petitioner was transferred to immigration custody, where he remained for approximately four months. (Pet. Decl. ¶ 2). In September of 2004, Petitioner

---

[1] Defendant Markwayne Mullin substitutes Kristi Noem, who, in her official capacity, was the originally named defendant Secretary of the Department of Homeland Security in this action. *See* Fed. R. Civ. P. 25(d) ("The officer's successor is automatically substituted as a party.").

[2] Petitioner does not state the nature of his offense of conviction, the sentence imposed, or the amount of time he served in prison. *See generally* (Pet. Decl.).

was released from ICE custody and placed on an Order of Supervision ("OSUP").  (*Id.*). Petitioner believes he was released from ICE custody because there was no repatriation agreement between Vietnam and the United States for noncitizens who entered the United States prior to July 12, 1995, and, therefore, ICE could not obtain travel documents from Vietnam.  (*Id.*); (Pet. ¶ 3).  According to Petitioner, over the last twenty-one years, he has complied with the terms of his OSUP, has never missed a check-in appointment, and has not obtained any new criminal cases.  (Pet. Decl. ¶ 2).

In January of 2026, Petitioner was told by ICE to enroll in the Intensive Supervision Appearance Program ("ISAP") and report back in February of 2026.  (Pet. ¶ 4).  Petitioner represents he enrolled in ISAP and complied with all ISAP requirements, had a home visit on February 10, 2026, and was scheduled for a meeting at the ISAP office with his case specialist on February 12, 2026.  (*Id.*); (Pet. Decl. ¶ 2).  However, Petitioner represents that the meeting never occurred because, when he arrived at the ISAP office on February 12, 2026, he was detained by ICE officers.  (Pet. ¶ 4).  After he was detained, he was transferred to the Adelanto Detention Center.  (*Id.* ¶ 5).

According to Petitioner, before being detained, he was not provided with a Notice of Revocation of Release, was not provided with an informal interview, and did not receive an individualized hearing before a neutral decisionmaker.  (*Id.* ¶¶ 6, 8); (Pet. Decl. ¶¶ 4, 5). Further, when he arrived at the ISAP office on February 12, 2026, Petitioner states that he met with an officer that said there was an order to detain him and asked him to sign a paper. (Pet. Decl. ¶ 3).  Petitioner represents that he did not understand the paper, and so he did not sign it.  (*Id.*).  Petitioner also represents on information and belief that, at the time of his arrest on February 12, 2026, ICE had no particularized evidence that Petitioner could be removed to Vietnam or any other country.  (Pet. ¶ 7).

In support of its Opposition, Respondents submit the Declaration of Cane Langill, a Deportation Officer with DHS, ICE, Enforcement and Removal Operations ("ERO"), in the Adelanto ICE Processing Center in Adelanto, California.  *See* (ECF No. 10-2 ("Langill Decl.")).  Langill is the Deportation Officer assigned to Petitioner's case.  Langill attests

that Petitioner was convicted of California Penal Code 273.5(a), Domestic Violence, in Los Angeles County Superior Court on June 25, 1992, and was sentenced to a fine and three years' probation. (*Id.* ¶ 6).

On December 19, 2003, ICE ERO served Petitioner with a Notice to Appear pursuant to Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), and on January 21, 2004, Petitioner was ordered removed to Vietnam. (*Id.* ¶¶ 7, 8).

Sometime thereafter, Petitioner was detained at the Reeves County Detention Center in Pecos, Texas. *See* (*id.* ¶ 9). On June 4, 2024, ERO El Paso encountered him there, lodged an I-247A Immigration Detainer for him, and transported him to the El Paso Staging Facility in El Paso, Texas. (*Id.* ¶¶ 9, 10). According to Langill, on October 7, 2004, ERO El Paso served Petitioner with an OSUP, Form I-220B, and the ERO El Paso Assistant Field Office Director granted Petitioner's release. (*Id.* ¶ 11). Respondents do not dispute Petitioner's representations that he complied with the requirements of his OSUP for the twenty-one years he remained released.

Respondents, however, dispute Petitioner's characterization of the events that transpired on February 12, 2026. On February 12, 2026, ERO Los Angeles Non-Detained Unit/Alternative to Detention Field Operations A-Team officers encountered Petitioner at the Los Angeles Intensive Supervision Appearance Program office in Los Angeles, CA. (*Id.* ¶ 13). That day, Langill attests that Petitioner was served with a Notice of Revocation of Release and provided an informal interview and an opportunity to respond to the reasons for revocation. (*Id.* ¶¶ 14, 15). Langill states that Petitioner did not provide a written statement or provide documents during this informal interview. (*Id.* ¶ 15). On March 4, 2026, travel documents were requested for Petitioner. (*Id.* ¶ 16).

Langill represents that in their experience, "Vietnam has issued travel documents as soon as sixty days after receiving a request." (*Id.* ¶ 17). According to the Declaration, "once travel documents are issued, [Petitioner] will be placed on a flight within two weeks." (*Id.* ¶ 18).

-4-

### B.    Procedural History

On March 22, 2026, Petitioner concurrently filed the Petition for Writ of Habeas Corpus, Motion for Temporary Restraining Order, and Memorandum in Support of Temporary Restraining Order. (Pet.); (Mot.); (Memo). Petitioner argues that his detention is unlawful because ICE failed to follow the proper procedures for revoking his OSUP, in violation of the Due Process Clause of the Fifth Amendment, § 1231 of the INA, and ICE's implementing regulations. *See* (Pet.). As relief, Petitioner requests: (1) immediate release from immigration custody; (2) an injunction to return any confiscated property; (3) a prospective injunction preventing Respondents from revoking Petitioner's release unless an assessment is made based on "individualized evidence that his removal is reasonably foreseeable," "an official with authority to revoke his release authorizes his detention," a determination is made "by an impartial adjudicator that his detention is justified based on danger or flight risk," and Respondents notify him of "the reasons for the revocation of his release"; and (4) attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412. (Pet. at Prayer for Relief).

Upon review of the Petition, Motion, and Memo, the Court set a briefing schedule on the Motion and ordered Respondents not to remove Petitioner from the Central District of California pending adjudication of the Petition. (ECF No. 8). Respondents filed an Opposition to the Motion on March 26, 2026. (ECF No. 10 ("Opp.")). Petitioner filed a Reply on March 27, 2026. (ECF No. 11 ("Reply")).

## II.    LEGAL STANDARD

A temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). A plaintiff may secure a temporary restraining order upon establishing

that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor and (4) an injunction is in the public interest. *See Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter*, 555 U.S. at 20).

"[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

The court is permitted to consider the parties' pleadings, declarations, affidavits, and exhibits submitted when deciding a motion for a temporary restraining order. *See Earth Island Inst. v. Nash*, No. 1:19-cv-01420-DAD-SAB, 2020 WL 1936701, at *6 (E.D. Cal. Apr. 21, 2020) ("[I]n considering a motion for preliminary injunction, a court may consider and rely upon declarations, affidavits, and exhibits submitted by the parties." (citations omitted)); *Harper v. Poway Unified Sch. Dist.*, 345 F. Supp. 2d 1096, 1119–20 (S.D. Cal. 2004) (considering declarations submitted by defendants to deny plaintiff's request for a preliminary injunction). "The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984). The urgency of the relief sought necessitates a prompt determination and can make it difficult to obtain admissible evidence. *See id.*

### III.   DISCUSSION

####   A.   Jurisdiction

As a preliminary matter, the Court addresses its jurisdiction to adjudicate the Petition and Motion.  Respondents contend that 8 U.S.C. §§ 1252(g) and 1252(b)(9) preclude the Court from reviewing Plaintiff's claim to "block his arrest and detention pursuant to removal proceedings." (Opp. at 7).  Petitioner asserts that he is not challenging the decision to execute his removal order, but, instead, the "revocation of his OSUP and his re-detention." (Reply at 7).  As described below and as previously affirmed by courts in the Central District of California, the Court has jurisdiction to review Petitioner's claim in his Petition and Motion that his detention is unlawful, despite the restrictions of §§ 1252(g) and 1252(b)(9).  *See Carballo v. Semaia*, No. 5:25-cv-03176-SPG-AJR, 2025 WL 4631991, at *5 n.2 (C.D. Cal. Dec. 3, 2025) (citing cases).

####     1.   Section 1252(g)

Under § 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).  Section 1252(g) is read narrowly to apply "only to three discrete actions that the Attorney General may take: 'her decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 486 (1999) (quoting 8 U.S.C. § 1252(g)) (emphasis in opinion) ("*AAADC*").  The statute does not include "any claim that can technically be said to arise from the three listed actions." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018).  Thus, decisions or actions that are a part of the deportation process, but not specifically the action of commencing proceedings, adjudicating cases, or executing removal orders, are not jurisdictionally barred from judicial review.  *See id.*

In accordance with *AAADC*, the Ninth Circuit has held that § 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir.

2025).  Instead, as it relates to the execution of removal orders, § 1252(g)'s jurisdictional bar applies to "ICE's discretionary authority to decide when or whether to execute a removal order."  *Id.* (internal quotation marks and citation omitted).  For example, § 1252(g) does not apply to due process claims because such claims "constitute general collateral challenges to unconstitutional practices and policies used by [the removing] agency," and do not arise from the narrowly defined decisions to "commence proceedings, adjudicate cases, or execute removal orders."  *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998) (citing *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991)).

Here, Petitioner contests the validity of his detention, arguing that the revocation of his OSUP violates the Due Process Clause of the Fifth Amendment, the INA, and implementing federal regulations.  (Pet. ¶¶ 30–40); *see* (Reply at 7–9).  On the face of the Petition, Petitioner does not challenge the Attorney General's decision to commence removal proceedings against him, to adjudicate such proceedings, or to execute his removal.  *See* (Pet. ¶¶ 30–40).  Section 1252(g) therefore does not pose a bar to the Court's review of the Petition.

Moreover, in raising § 1252(g)'s jurisdictional bar, Respondents do not identify how Petitioner's claims fall into one of those three specific actions.  *See* (Opp. at 5).  Instead, Respondents argue that Petitioner's claims are barred because he "appears to challenge the government's decision and action to remove and detain him, which arises from [an] immigration official's decision to commence removal proceedings."  (*Id.* at 6).  This broad reading of "removal proceedings" is directly contrary to Supreme Court and Ninth Circuit precedent requiring narrow application of § 1252(g).  *See Ibarra-Perez*, 154 F.4th at 997.  Therefore, because Respondents' argument does not demonstrate that Petitioner's claims challenge one of the three specific actions barred by § 1252(g), the Court is not jurisdictionally barred from reviewing Petitioner's claims.  *See Hernandez v. Mullin, et al.*, No. 5:26-cv-00585-JAK-ADS, 2026 WL 846037, at *5–*6 (C.D. Cal. Mar. 24, 2026) (collecting cases).

2.      Sections 1252(b)(9) and 1252(a)(5)

Under § 1252(a)(5), "[n]otwithstanding any other provision of law . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter."  8 U.S.C. § 1252(a)(5).  Section 1252(b)(9), in comparison, states, "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9).  Section 1252(b)(9) continues, "[e]xcept as otherwise provided in this section, no court shall have jurisdiction . . . to review such an order or such questions of law or fact."  *Id.*

Sections 1252(a)(5) and 1252(b)(9), however, are inapplicable here.  First, § 1252(a) provides for "judicial review of an order of removal entered or issued under any provision of this chapter."  28 U.S.C. § 1252(a)(5).  Because Petitioner challenges the revocation of his OSUP and the legality of his detention, not the order of removal entered against him on January 21, 2004, *see* (Pet. ¶¶ 1, 2); (Reply at 9), § 1252(a)(5) is inapplicable.

Second, although § 1252(b)(9)'s restriction against challenges to orders of removal appears to be broadly stated in the text of the statue, this provision does not "preclude habeas review over challenges to detention that are independent of challenges to removal orders."  *Singh v. Holder*, 638 F.3d 1196, 1211 (9th Cir. 2011) (quoting H.R. Rep. No. 109–72 at 175); *see also Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) ("§ 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." (internal quotation marks and ellipses omitted)).  Respondents' citation to *J.E.F.M. v. Lynch* for the proposition that, "[t]aken together, § 1252(a)(5) and § 1252(b)(9) mean that any issue—whether legal or factual—arising from any removal-related activity can be reviewed only through the [petition-for-

review] process," overlooks the instruction that these "provisions channel judicial review over final orders of removal."   837 F.3d 1026, 1031 (9th Cir. 2016); *see* (Opp. at 6). Challenges to immigration detention are "claims that are collateral to, or independent of, the removal process," not precluded by §§ 1252(a)(5) and 1252(b)(9), and district courts therefore have authority to adjudicate such cases.  *See Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 810 (9th Cir. 2020) ("Section 1252(b)(9) is also not a bar to jurisdiction over noncitizen class members' claims because claims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process.").  Petitioner's challenge to his detention, brought pursuant to a habeas petition, is independent of any challenge to his removal order.  The Court therefore concludes it has jurisdiction pursuant to 28 U.S.C. § 2241 to review Petitioner's claims that the revocation of his OSUP and subsequent detention are unlawful.  *See Hernandez*, 2026 WL 846037, at *4 (collecting cases).

### B.   *Winter* Factors

Having concluded that it has jurisdiction over Petitioner's claims, the Court turns to the merits of the Motion.  Petitioner contends that he is likely to succeed on the merits of his claim because Respondents "failed to follow the proper procedures for revoking his OSUP."   (Memo at 8).   In opposition, Respondents state that they "followed proper procedures," and that Petitioner "has not shown that there are any insurmountable barriers precluding his removal."  (Opp. at 3, 8).  For the reasons set forth below, the Court finds that Petitioner is likely to succeed on the merits of his claims, and the *Winter* factors weigh in Petitioner's favor.

#### 1.   Likelihood of Success on the Merits

The Court first finds that Respondents detained Petitioner in violation of federal regulations and, thus, Petitioner has shown that he is likely to succeed on the merits of his due process claim.[3]

---

[3] Respondents argue that the Petition and Motion should be denied because federal habeas petitions are subject to heightened pleading standards compared to other civil actions, and

*a)*    *Statutory Framework*

"Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This liberty interest is vested in "all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693; *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("The Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings.") (internal quotation marks and citation omitted).

The procedures for removing noncitizens living unlawfully in the United States, including detention during removal proceedings, is governed by federal immigration law and its attendant regulations. *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021). Section 1231(a) of the INA requires the government to secure the removal of a noncitizen ordered removed "within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The government is required to detain the noncitizen for this initial ninety-day period to effectuate removal. *Id.* § 1231(a)(2)(A). If removal is not effectuated during this period, "the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3). Certain categories of removable noncitizens may be detained beyond the removal period, as delineated in section 1231(a)(6), so long as their detention comports with principles of due process. *See Zadvydas*, 533 U.S. at 689, 701 (holding that due process requires reading in an "implicit limitation" on the duration of detention under § 1231(a)(6) and adopting a "presumptively reasonable period of detention" of up to six months).

that the Petition fails to meet these heightened standards. (Opp. at 7–8) (citing *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (Fed. R. Civ. P. 8(a) requires only "fair notice" whereas Habeas Rule 2(c) is "more demanding," and federal habeas petitions are "expected to state facts that point to a real possibility of constitutional error")). Based on the Court's review of the Petition and Motion, and as described in this Order, Petitioner has stated sufficient facts such that he is likely to succeed on the merits of his due process claim and likely meets Habeas Rule 2(c)'s heighted pleading standards.

Once a noncitizen is released pursuant to section 1231(a)(3), their release may be revoked so long as it is in accordance with federal regulations. *See Luu v. Bowen*, No. 5:25-cv-03145-MEMF-SP, 2025 WL 3552298, at *6 (C.D. Cal. Dec. 11, 2025) (analyzing that when an individual is re-detained after release on supervision, "[s]ection 241.13 actually codifies how *Zadvydas* should apply"). First, an individual subject to an order of supervision "who violates any of the conditions of release may be returned to custody and is subject to" certain penalties, including possible criminal prosecution. 8 C.F.R. § 241.13(i)(1); *see also* 8 C.F.R. § 241.4(l)(1). Second, for those who have not violated their conditions of release, the government may "revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). Third, certain officials may exercise their discretion to revoke an alien's release where (i) the purposes of release have been served; (ii) the alien violated a condition of release; (iii) it is appropriate to enforce a removal order or to commence removal proceedings; or (iv) the conduct of the alien indicates that release would no longer be appropriate. *Id.* § 241.4(l)(2).

When revoking an order of supervision, the government is required to notify the noncitizen "of the reasons for revocation of his or her release" and to "conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3); *see also id.* §§ 241.4(l)(1), (3). If the noncitizen is not released after the informal interview, their continued detention will be subject to a review process "within approximately three months after release is revoked," followed thereafter by periodic reviews as necessary. *Id.* § 241.4(l)(3).

Enforcement of these procedures has been delegated to the Executive Branch. *LaDuke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985), *amended*, 796 F.2d 309 (9th Cir. 1986). In effectuating its duties, "an agency must abide by its own regulations." *Fort Stewart Schs. v. Fed. Lab. Rels. Auth.*, 495 U.S. 641, 654 (1990). Even where agency

action is discretionary, an agency's "failure to exercise its own discretion, contrary to existing valid regulations," is a violation of law. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). Thus, when a noncitizen is ordered removed and detained, immigration officials must act in a manner that comports with principles of due process and applicable federal statutes and regulations. *See Burunsuzyan v. Noem*, No. 5:26-cv-00049-RGK-AGR, 2026 WL 246067, at \*3 (C.D. Cal. Jan. 27, 2026) ("[I]mmigration enforcement agencies' failing to comply with federal immigration law when removing or detaining a noncitizen ultimately violates the noncitizen's due process rights.") (citing cases). Failure to follow such regulations is unlawful, the remedy for which "may be injunctive relief, reversal of the agency action, or reversal and remand with an order requiring the agency to follow its own procedures." *Clemente v. United States*, 766 F.2d 1358, 1365 n.10 (9th Cir. 1985).

A noncitizen may challenge the revocation of their supervised release by "provid[ing] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Once good reason is shown, "the Government must respond with evidence sufficient to rebut that showing." *Id.*

b)    Analysis

Petitioner argues that Respondents unlawfully revoked his OSUP and detained him because: (1) Respondents did not establish changed circumstances existed before he was re-detained by ICE; (2) Respondents did not provide proper notice or an informal interview before his re-detention; and (3) the signatory Supervisory Detention and Deportation Officer lacked authority to revoke Petitioner's release.[4] *See* (Memo).

Respondents argue that the proper procedures were followed in detaining Petitioner, and submit exhibits, which purport to demonstrate that Petitioner was served with a Notice

---

[4] Respondents raise no response to the argument that the signatory Supervisory Detention and Deportation Officer was not authorized to revoke Petitioner's release. *See* (Opp.). In light of the other arguments raised in the Opposition, the Court, in its discretion, declines to address this issue on a motion for temporary restraining order.

of Revocation of Release and that an informal interview was conducted. *See* (ECF No. 10-1 (exhibits dated February 12, 2026, consisting of a "Notice of Revocation of Release," "Alien Informal Interview," and "Warrant for Arrest of Alien")). Petitioner responds that the Notice of Revocation of Release was not properly served on him and disputes the authenticity and validity of the Alien Informal Interview. (Reply at 11–12).

Considering these factual and evidentiary disputes, the Court instead focuses on the following facts, which are not in dispute. *See Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) ("In deciding a motion for a preliminary injunction, the district court is not bound to decide doubtful and difficult questions of law or disputed questions of fact."). First, Petitioner was ordered removed by an immigration judge on January 21, 2004. (Langill Decl. ¶ 8). Second, Petitioner was placed on an OSUP in or around September or October of 2004. (*Id.* ¶ 11); (Pet. Decl. ¶ 2). Third, Petitioner asserts, and Respondents do not dispute, that Petitioner has complied with the terms of this 2004 OSUP. (Pet. Decl. ¶ 2). Fourth, Petitioner was detained at the Los Angeles ISAP office on February 12, 2026. (*Id.* ¶ 3); (Langill Decl. ¶ 13). Fifth and finally, travel documents were requested for Petitioner on March 4, 2026. (Langill Decl. ¶ 16). In summary, based on these undisputed facts, Petitioner complied with the requirements of his OSUP for the twenty-one years he remained released, Respondents revoked Petitioner's release without first establishing a change in circumstances, and Respondents did not request travel documents for Petitioner until after he was detained. The undisputed facts demonstrate Respondents have not complied with the procedures for revocation of Petitioner's supervised release.

Petitioner also has provided evidence demonstrating there is good reason to believe there is not a significant likelihood of his removal in the reasonable foreseeable future. *See Zadvydas*, 533 U.S. at 701. Petitioner represents that in September of 2004, he was released on an OSUP "because ICE could not obtain travel documents from Vietnam." (Pet. Decl. ¶ 2). Petitioner represents that he does not know whether or when his removal can be effectuated, as he has no relatives in Vietnam and has not been interviewed by any

Vietnamese officials since his re-arrest. (*Id.* ¶¶ 4, 6). Citing to ICE's publicly available statistics, Petitioner also points out that, as of 2025, "only a tiny fraction of [Vietnamese noncitizen] detentions are resulting in actual removals." (Memo at 6 n.1). Petitioner has therefore shown good reason to believe there is no significant likelihood of removal in the reasonable foreseeable future. *See Luu*, 2025 WL 3552298, at *7 (finding that the petitioner established good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future because it was unclear if or when the travel documents for his designated country of removal would be issued).

The burden has thus shifted to Respondents to rebut Petitioner's showing. The Court, however, finds that Respondents have not met this burden. As described above, ICE may revoke Petitioner's OSUP only upon a finding of "changed circumstances," such that there is a "significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). District courts do not make the initial determination of changed circumstances. *See Manivong v. Bondi*, No. 25-cv-6747-JFW-KES, 2025 WL 3211455, at *5–*6 (C.D. Cal. Sept. 3, 2025) (citing *id.* § 241.13(f)). Instead, "[t]o the extent ICE claims that it made such a determination, the court should review that claim in light of the regulations instructing ICE on how it should make such a determination." *Kong v. United States*, 62 F.4th 608, 620 (1st Cir. 2023) (citing 8 C.F.R. § 241.13(f)). When assessing if there is a significant likelihood of removal in the reasonably foreseeable future, immigration regulations instruct that ICE "shall consider all the facts of the case," including (1) "the history of the alien's efforts to comply with the order of removal," (2) "the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts," (3) "the reasonably foreseeable results of those efforts," and (4) "the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question." 8 C.F.R. § 241.13(f).

Here, Respondents have not presented any facts to demonstrate that ICE officers engaged in the above factor-based analysis to determine whether, based on the criteria set forth in 8 C.F.R. § 241.13(f), there was a change in circumstances since the issuance of Petitioner's OSUP in the fall of 2004 to warrant the revocation of Petitioner's OSUP. To the contrary, Langill attests instead that Petitioner was identified for immigration detention "through system queries conducted by the ERO Los Angeles A-Team, which confirmed that he was subject to an Executable Final Order of Removal. Based on this determination, officers proceeded to the ISAP office to effectuate [Petitioner's] arrest." (Langill Decl. ¶ 12). The basis for Petitioner's arrest was the Final Order of Removal entered on January 21, 2004, before Petitioner's release on the OSUP. The Langill Declaration does not demonstrate ICE considered any other subsequent facts to determine whether Petitioner could be removed in the reasonably foreseeable future. Moreover, ICE did not request travel documents for Petitioner until March 4, 2026, after Petitioner was re-detained. *See* (*id.* ¶ 16). The Court therefore concludes that Respondents have not shown a determination was made that changed circumstances existed before issuing the Notice of Revocation. *See Duong v. Charles*, No. 1:25-cv-01375-SKO, 2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025) ("[T]he record does not show that a changed-circumstances determination was made *at or before* Petitioner's re-detention on July 1, 2025. Instead, the record shows that the Government did not even submit a request to Vietnam for travel documents until July 30, 2025—*almost a month after* re-detaining Petitioner."); *Uzzhina v. Chestnut*, No. 1:25-cv-01594-DAD-SCR, 2025 WL 3458787, at *4 (E.D. Cal. Dec. 2, 2025) ("[S]imply applying for travel documents after detention is insufficient to show changed circumstances warranting the detaining of a petitioner."); *cf. Manivong*, 2025 WL 3211455, at *6 (determining changed circumstances existed to demonstrate a significant likelihood of removal in the reasonably foreseeable future because the government obtained valid travel documents to deport a petitioner).

Moreover, that other Vietnamese nationals have been successfully removed to Vietnam does not support the likelihood that Petitioner may be removed in the reasonably

foreseeable future.  A determination must be made for each specific individual.  *See Bui v. Noem*, No. 5:25-cv-03370-RGK-AJR, 2025 WL 4061564, at *3 (C.D. Cal. Dec. 30, 2025) ("[E]vidence that others have been removed, without a specific comparison to Petitioner's case, do little to show that Petitioner, himself, is likely to be removed in the reasonably foreseeable future.").    Thus, absent a pre-detention determination of changed circumstances, Petitioner's detention is not authorized by immigration regulations.  Given the record currently before the Court does not demonstrate that a determination was made that changed circumstances justified revoking Petitioner's release, ICE's re-detention of Petitioner was arbitrary, in violation of 8 C.F.R. § 241.13(i)(2).[5]

Accordingly, for all the foregoing reasons, Petitioner is likely to succeed on the merits of his claim that ICE violated his due process rights.  *See Duong*, 2025 WL 3187313, at *5 ("[T]he Government violated Petitioner's due process rights by not complying with its own rule under section 241.13(i)(3).").

### 2.    Irreparable Harm

"It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury."  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotation marks and citation omitted).  "Deprivation of physical liberty by detention constitutes irreparable harm."  *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018).

Here, as discussed above, Petitioner has been unlawfully detained in violation of ICE's own regulations, depriving him of his due process rights.  *See* (Memo).  Petitioner has therefore suffered irreparable harm because of his detention and will continue to suffer the harm absent relief.  The second *Winter* factor thus weighs in favor of Petitioner.

---

[5] To the extent Respondents instead seek to rely on the revocation authority in 8 C.F.R. § 241.4 / 8 C.F.R. § 241.13, they have not argued or put forth any evidence that a determination was made by an authorized official as to the existence of any of the conditions listed therein.

3.      Balance of the Equities and Public Interest

When the Government is the party opposing the relief sought, the balance of equities and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). As the Ninth Circuit has explained, "it is always in the public interest to prevent the violation of a party's constitutional rights," and "[t]he government also cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023). Given the Court's finding that Petitioner is likely to succeed on the merits of his due process claim, and in the absence of any countervailing interests identified by Respondents, the Court concludes that Petitioner's concrete harms heavily outweigh any interest that Respondents may have. Therefore, the third and fourth *Winter* factors support injunctive relief.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion.

1.   Respondents are ORDERED to immediately release Petitioner from ICE custody under an Order of Supervision and restore him to the same supervision conditions and restrictions that existed prior to his re-detention;

2.   Respondents are ORDERD to return any confiscated property from Petitioner, including, but not limited to, any identification documents and employment authorization documents;

3.   Respondents are ENJOINED AND RESTRAINED from re-detaining Petitioner absent any of the following: (a) Petitioner's violation of his conditions of release pursuant to 8 C.F.R. § 241.13(i)(1); (b) a showing of changed circumstances under 8 C.F.R § 241.13(i)(2) beyond the request for travel documents; (c) a determination by an authorized official that any of the conditions of 8 C.F.R. § 241.4(l)(2) are satisfied; or (d) other circumstances authorizing detention under applicable law; and

4.   Respondents are ORDERED TO SHOW CAUSE in writing no later than seven (7) days from the date of this Order why the Court should not issue a

preliminary injunction.  Petitioner may file a Reply no later than ten (10) days from the date of this Order.  The Court sets a hearing on whether a preliminary injunction should issue for Wednesday, April 15, 2026, at 10:00 a.m.  The Court will accept a stipulated briefing schedule extending these dates on the condition that the parties agree to an extension of the TRO.

**IT IS SO ORDERED.**

DATED:  March 31, 2026

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE