# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRIEU MINH LY,<br><br>                              Petitioner,<br><br>          v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General; MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; WARDEN, Adelanto Detention Facility; and ANDRES QUINONES, in his official capacity as ICE Field Office Director,<br><br>                              Respondents. | Case No. 5:26-cv-01320-SPG-DFM<br><br>**ORDER RE ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE [ECF NO. 13]** |

Before the Court are the responses to the Court's Order to Show Cause as to why a preliminary injunction should not issue. *See* (ECF No. 14 ("Response")); (ECF No. 15 ("Reply")). The Court has read and considered the responses and concluded that the matter is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS Petitioner Trieu Minh Ly's ("Petitioner") request for preliminary injunction.

## I.  BACKGROUND

### A.  Factual Background

In the TRO Order, the Court summarized the facts alleged in the Petition for Writ of Habeas Corpus and Petitioner's Declaration in support of the Motion for Temporary Restraining Order and incorporates that description by reference. *See* (ECF No. 13 ("TRO Order")).

In summary, Petitioner was arrested by Immigration, Customs, and Enforcement ("ICE") officers when he was told to appear for a meeting at the Los Angeles Intensive Supervision Appearance Program ("ISAP") office on February 12, 2026. *See* (ECF No. 6 ("Petition")).  Petitioner was thereafter detained at Adelanto Detention Center. *See* (*id.*).  On March 22, 2026, Petitioner filed the Petition and Motion for Temporary Restraining Order, requesting both immediate release from immigration custody on an Order of Supervision ("OSUP") issued in or around September or October of 2004, and prospective relief enjoining his re-detention absent compliance with federal regulations.  (TRO Order at 5).  As Respondents, Petitioner names Todd Blanche, in his official capacity as Acting Attorney General; Markwayne Mullin, in his official capacity as Secretary of the Department of Homeland Security; U.S. Department of Homeland Security ("DHS"); Warden, Adelanto Detention Facility; and Andres Quinones, in his official capacity as ICE Field Office Director.[1]  *See* (Pet.).

On March 31, 2026, after reviewing the parties' briefing, the Court granted the TRO Motion, (ECF No. 7), ordered Petitioner's immediate release, and ordered Respondents to show cause why a preliminary injunction should not issue. *See* (TRO Order).  In the TRO Order, the Court found that Petitioner was likely to succeed on the merits of his due process claim that Respondents detained him in violation of federal regulations. *See* (*id.*).  The

---

[1] Respondent Todd Blanche substitutes Pamela Bondi, who, in her official capacity, was the originally named respondent Attorney General, and Respondent Markwayne Mullin substitutes Kristi Noem, who, in her official capacity, was the originally named respondent Secretary of the Department of Homeland Security in this action. *See* Fed. R. Civ. P. 25(d) ("The officer's successor is automatically substituted as a party.").

Court first found that Petitioner had a likelihood of success on the merits because ICE violated its own regulations in re-detaining Petitioner. (*Id.* at 13–17). Based on the Court's analysis, ICE regulations permit the revocation of supervised release only upon a finding of changed circumstances and require that the detainee be provided with notice of those circumstances and an informal hearing to contest the finding of changed circumstances. (*Id.* at 15) (citing 8 C.F.R. § 241.13(i)(2)). The changed circumstances identified by Respondents—namely, the request for travel documentation from Vietnam—post-dated Petitioner's re-detention and, since the issuance of his OSUP in September or October of 2004, Respondents did not otherwise demonstrate the circumstances had changed regarding Petitioner's ability to be removed to Vietnam before re-detaining Petitioner. (*Id.* at 16–17). Therefore, the Court found that Respondents' decision to re-detain Petitioner was arbitrary and likely violated his due process rights. (*Id.*). In addition, the Court found that Petitioner suffered irreparable harm by virtue of his detention in violation of his constitutional rights. (*Id.* at 17–18). Lastly, the Court found that the balance of equities and public interest weighed in Petitioner's favor, particularly given the absence of any contrary argument from Respondents. (*Id.* at 18). Based on these findings, the Court ordered Respondents to immediately release Petitioner from ICE custody on an OSUP and restore him to the same supervision conditions and restrictions that existed before his re-detention on February 12, 2026. (*Id.* at 18–19). The Court also granted Petitioner's request for an Order to Show Cause and concurrently issued the Order to Show Cause why a preliminary injunction should not issue. (*Id.*); *see* (ECF No. 7-6 (Petitioner's Proposed Order to Show Cause)).

Respondents filed a Response to the Order to Show Cause on April 1, 2026, (Response), and Petitioner filed a Reply on April 2, 2026, (Reply). In their Response, Respondents represent that on March 31, 2026, Petitioner was released from immigration detention and his personal items returned. (Response at 1). Respondents argue that a preliminary injunction should not issue because Petitioner's release from custody moots the Petition. *See* (*id.*). Petitioner, on the other hand, contends that the Petition is not moot

given that Respondents "do not concede that revocation of Petitioner's release was improper," and thus, Petitioner faces a risk of re-arrest and re-detention.  (Reply at 6).

## II.   LEGAL STANDARD

The standard for issuing a preliminary injunction is essentially the same as that for issuing a temporary restraining order.  *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical.") (internal quotation marks and citation omitted).  Thus, a petitioner may secure a preliminary injunction upon establishing that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  "[S]erious questions going to the merits and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction," so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'"  *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'"  *Id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

## III.   DISCUSSION

In the Response, Respondents do not address the standards for issuance of a preliminary injunction.  *See* (Response).  Instead, Respondents assert that, "[b]ecause Petitioner has been released, the alleged injury—the detention itself—has ended, and there is no further relief for this Court to provide," and the Petition should be dismissed as moot. (Response at 2).  Respondents cite cases in which other courts in this District have

-4-

dismissed habeas petitions as moot following the issuance of a TRO, but do not offer other arguments as to why the Court should not issue a preliminary injunction. *See generally* (*id.*).[2]

### A.    Mootness

The case-or-controversy requirement of Article III, § 2 of the United States Constitution "subsists through all stages of federal judicial proceedings." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). A litigant must maintain "a personal stake in the outcome of the suit throughout all stages of federal judicial proceedings." *Abdala v. INS*, 488 F.3d 1061, 1063 (9th Cir. 2007) (internal quotation marks and citation omitted); *see also Spencer*, 523 U.S. at 7 ("[T]hroughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.") (internal quotation marks and citation omitted).

Temporary release of a habeas petitioner pursuant to a TRO or preliminary injunction does not necessarily moot the underlying habeas petition. *See Nielsen v. Preap*, 586 U.S. 392, 403 (2019). Such preliminary relief "do[es] not conclusively resolve legal disputes," but instead involves only a determination that "a plaintiff is *likely* to succeed on the merits." *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025). Preliminary relief serves a limited purpose to "preserve the relative positions of the parties until a trial on the merits can be held" and should not be taken as "tantamount to [a] decision[] on the underlying merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). By its own terms, a TRO is only temporary; it involves no final determination of the merits and has no continuing effect beyond the initial 14-day period. *See* Fed. R. Civ. P. 65(b)(2) ("The [TRO] expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time

---

[2] Respondents have thus conceded that, if the Court finds the case is not moot, a preliminary injunction should issue based on the Court's previous analysis in the TRO Order, which remains the same, given that Respondents have not shown the factual circumstances— other than Petitioner's release—have changed. The Court therefore incorporates its reasoning for the TRO into this Order.

the court, for good cause, extends it for a like period or the adverse party consents to a longer extension."); *see also Ta v. Noem*, No. 5:25-cv-02902-MEMF-JDE, 2025 WL 3764001, at *3 (C.D. Cal. Dec. 22, 2025) ("[T]o treat the TRO as mooting the case would also imply the Court's preliminary findings substitute for disposition on the merits.").

Thus, where a petitioner obtains preliminary relief, there may still be a live controversy as to any remaining requests for relief raised in the habeas petition. *See Nielsen*, 586 U.S. at 403 (recognizing that an individual released from immigration detention pursuant to a preliminary injunction "faced the threat of re-arrest and mandatory detention" absent a permanent injunction not disturbed on appeal, thus presenting a live controversy). The interpretation that Respondents proffer—namely, that the Court can provide no further relief other than Petitioner's immediate release, *see* (Response at 2)— would effectively force habeas petitioners to choose between seeking immediate release, thereby mooting any requests for prospective relief, or foregoing preliminary relief to receive adjudication of their requests for prospective relief. Habeas relief need not be so limited. *See Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973) ("[H]abeas corpus relief is not limited to immediate release from illegal custody, but [] the writ is available as well to attack future confinement."); *but see Picrin-Peron v. Rison*, 930 F.2d 773, 776 (9th Cir. 1991) (holding that an immigration habeas petition was moot when the petitioner was released and the government provided a sworn declaration from the Director of the United States Immigration and Naturalization Service, Los Angeles Field Office, attesting that the petitioner, absent certain changed circumstances, would remain on parole).

Based on these principles, the Court finds that the Petition continues to present a live controversy and is not mooted by Petitioner's release on March 31, 2026. First, the TRO Order did not address all the relief requested in the Petition. Petitioner requested both immediate and prospective relief, including: (1) immediate release from immigration custody on the OSUP conditions in place prior to his detention on February 12, 2026; and (2) injunctive relief prohibiting Respondents from re-detaining Petitioner without individualized evidence that his removal is reasonably foreseeable, without providing a

determination by an impartial adjudicator that his detention is justified, without compliance with federal regulations, such as notifying him of the reasons for revocation of release and providing both an opportunity to rebut those reasons and a prompt interview, and absent authorization from an official authorized to revoke his release.  (Pet. at Prayer for Relief). The TRO Order only addressed Petitioner's request for immediate release based on the Court's finding that Petitioner was likely to succeed on the merits of his due process claim. (TRO Order at 14–17).  The Court did not address Petitioner's requests for prospective, injunctive relief.  (*Id.*).  Thus, Petitioner's request for prospective, permanent relief in the form of an injunction remains.  *See, e.g.*, *Min v. Santacruz*, No. 2:25-cv-10971-MEMF-AS, 2025 WL 3764071, at *2 (C.D. Cal. Dec. 23, 2025) ("[T]he TRO, like the requested preliminary injunction, is inherently temporary; neither would outlive this case."); *Cruz v. Lyons*, No. 5:25-cv-02879-MCS-MBK, 2025 WL 3443146, at *2 (C.D. Cal. Dec. 1, 2025) ("A habeas petition is not moot where preliminary relief is not made permanent.") (citing *Nielsen*, 586 U.S. at 403).

Second, Petitioner challenges his re-detention barring Respondents' compliance with certain due process protections.  He represents that on February 12, 2026, Respondents detained him and revoked his OSUP without following the appropriate procedures.  (ECF No. 7-2 ("Pet. Decl.") ¶¶ 3–8).  In particular, Petitioner contends that when he was detained, Respondents failed to demonstrate changed circumstances existed before his re-detention, in violation of 8 C.F.R. § 241.13(i)(2), and Respondents did not serve a Notice of Revocation or provide an informal interview, in violation of 8 C.F.R § 241.13(h)(4)(i)(2).  *See* (Pet.).  Because the parties dispute whether a Notice of Revocation of Release or informal interview was provided, the TRO Order addressed only Respondents' failure to show changed circumstances before re-detaining Petitioner.  *See* (TRO Order at 14).  Now that Petitioner has been released, Respondents have not provided any assurances that they will comply with the regulations at issue or that they will not re-detain Petitioner absent a showing of changed circumstances.  *Compare* (Response) *with Picrin-Peron*, 930 F.2d at 776.  Thus, although Petitioner has been released on an OSUP,

he remains subject to the threat of re-arrest and re-detention without the process he is due. *See Min*, 2025 WL 3764071, at *2 (finding that a case was not moot because the government did not "disavow[] their practices, . . . adjust[] their policies, [or] assure[] Petitioner that he is not subject to redetention"); *Ta*, 2025 WL 3764001, at *3 (same); *Sompal v. Semaia*, No. 5:26-cv-00320-CV-SP, 2026 WL 445621, at *3 (C.D. Cal. Feb. 17, 2026) (Respondents did not meet the burden to demonstrate mootness, having "provided no assurance—sworn or otherwise—that Petitioner will not be re-detained unlawfully upon the expiration of the TRO," nor pointing "to anything in the record showing that it is 'absolutely clear' that the challenged conduct is not likely to recur").

Third, Respondents' cited cases, in which some sister courts in the Central District have deemed moot requests for a preliminary injunction where petitioners received bond hearings pursuant to a temporary restraining order, are unpersuasive, given the facts and circumstances in this case.  (Response at 2–3) (citing *Hernandez Trujillo v. Janecka*, No. 5:25-cv-03002-FMO-SSC, 2026 WL 84314, at *1–*2 (C.D. Cal. Jan. 12, 2026); *Petrosyan v. Bondi*, No. 5:25-cv-03240-CV-AS, ECF No. 11 (C.D. Cal. Dec. 31, 2025); *Hoang v. Cruz*, No. 5:25-cv-02766-JGB-DSR, ECF No. 22 (C.D. Cal. Jan. 7, 2026); *Woldegabriel v. Noem*, 5:25-03369-ODW-PVC, ECF No. 11 (C.D. Cal. Dec. 29, 2025); *Hezardastan v. Noem*, No. 5:25-cv-03424-AB-DTB, ECF No. 12 (C.D. Cal. Jan. 5, 2026); *Hashemi v. Noem*, No. 2:25-cv-10335-HDV-SP, ECF No. 19 (C.D. Cal. Jan. 7, 2026)).  As Petitioner argues, these citations are inapposite.  In *Hernandez Trujillo*, the petitioner requested prospective injunctive relief "in the alternative to the ultimate relief sought— petitioner's immediate release—which the court granted."  2026 WL 84314, at *1 n.1. Petitioner here requests both immediate and prospective relief in the Petition, not prospective relief in the alternative.  *See* (Pet. at Prayer for Relief).  The courts in *Petrosyan* and *Woldegabriel*, for instance, found that, though the petitioner's motion for preliminary injunction was moot, the habeas petition itself was not because the parties had obtained the emergency relief sought, and the petitioners had not argued that their re-detention was likely.  *See Petrosyan*, No. 5:25-cv-03240-CV-AS, ECF No. 11, at 4; *Woldegabriel*, 5:25-

03369-ODW-PVC, ECF No. 11, at 2.  In addition, in *Hoang* and *Hashemi*, the courts found that the petitioner's release from federal custody mooted their habeas petitions without describing the basis for dismissal of the case.  *See Hoang*, No. 5:25-cv-02766-JGB-DSR, ECF No. 22, at 1; *Hashemi*, No. 2:25-cv-10335-HDV-SP, ECF No. 19, at 1.  Finally, unlike here, the petitioner in *Hezardastan* voluntarily dismissed the petition as moot.  *See Hezardastan v. Noem*, No. 5:25-cv-03424-AB-DTB, ECF No. 12, at 1.  In sum, Respondents' cited cases are not analogous here, where Petitioner seeks an order to prospectively enjoin his re-detention, and Respondents have made no representation that Petitioner will not be unlawfully re-detained upon the expiration of the TRO.  *See Picrin-Peron*, 930 F.2d at 776.

Therefore, because the TRO Order only offers Petitioner temporary relief and Petitioner seeks prospective relief in the form of an injunction preventing his re-detention absent compliance with federal regulations, this action presents a live controversy.  In the absence of any further argument regarding the sufficiency of Petitioner's showing under *Winter*, the Court adopts the reasoning articulated in the TRO Order and concludes that a preliminary injunction should issue.  Petitioner is likely to succeed on the merits of his procedural due process claim, he faces irreparable harm absent injunctive relief, and the balance of the equities and the public interest favor an injunction.  *See* (TRO Order).

## IV.  CONCLUSION

For the reasons stated above, the Court DISCHARGES the Order to Show Cause why a preliminary injunction should not issue, GRANTS Petitioner's request for preliminary injunction, and ORDERS as follows:

(1)  Respondents and all of their officers, agents, servants, employees, attorneys, successors, assigns, and persons acting in concert or participation with them are ENJOINED AND RESTRAINED from re-detaining Petitioner absent any of the following: (a) Petitioner's violation of his conditions of release pursuant to 8 C.F.R. § 241.13(i)(1); (b) a showing of changed circumstances under

8 C.F.R § 241.13(i)(2) beyond the request for travel documents; or (c) other circumstances authorizing detention under applicable law; and

(2) The parties are directed to follow the orders of the Magistrate Judge regarding further proceedings related to the underlying Petition.

**IT IS SO ORDERED.**

DATED:  April 23, 2026



HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE